(364 P.3d 1206)

No. 113,043

ROBERT G. ROGERS, *Appellee,* v. ALT-A&M JV LLC, *Appellant.*

December 18, 2015.

*Patrick C. Smith*, of Patrick C. Smith, LLC, of Pittsburg, for appellant.

*William L. Phalen*, of Pittsburg, for appellee.

Before SCHROEDER, P.J., PIERRON, J., and HEBERT, S.J.

SCHROEDER, J.: ALT-A&M JV LLC (ALT-A&M) appeals the Workers Compensation Board's (the Board) determination Robert G. Rogers suffered a 7.5% permanent partial impairment to his lower left extremity. We find ALT-A&M's challenge to the award is without merit. We affirm the Board's award. It is supported by substantial evidence that Rogers' injury arose out of and in the

course of his employment on September 15, 2008. We also determine Rogers' request for his appellate attorney fees must be denied since Supreme Court Rule 7.07(b) (2015 Kan. Ct. R. Annot. 72) applies only to district courts and not to decisions of the Board.

## FACTS

On September 15, 2008, Rogers injured his knee at work when he fell while carrying a 5-gallon bucket of hydraulic fluid down a muddy incline. He filled out an incident/accident form the same day. Rogers was seen by multiple doctors and ultimately had knee surgery in February 2009.

In December 2009, Dr. Edward Prostic evaluated Rogers' knee. Dr. Prostic determined Rogers had 10% permanent partial impairment of his left lower extremity due to partial synovectomy and recurrent subluxation of the patella.

ALT-A&M deposed Rogers on May 10, 2010. At the deposition, Rogers testified he had no problems with his left knee prior to the 2008 injury. ALT-A&M questioned Rogers about a mid-1980's left knee injury, which Rogers denied. Similarly, Rogers denied ever receiving an impairment rating prior to the rating from Dr. Prostic. Rogers was sent to Dr. Peter Bieri for an independent medical examination. Dr. Bieri determined Rogers had 5% left lower extremity impairment due to patellofemoral pain.

At the regular hearing, Rogers testified he was injured while carrying a 5-gallon bucket of hydraulic fluid down a muddy incline. He also testified he completed an accident report "to get workmen's [sic] comp." ALT-A&M again cross-examined Rogers regarding a mid-1980's knee injury, and Rogers testified he did not remember injuring his knee during the 1980's.

On November 2, 2011, the Administrative Law Judge (ALJ) suspended terminal dates pending Dr. Bieri's review of records of a 1999 left knee injury and receipt of Dr. Bieri's supplemental report. Dr. Bieri provided a supplemental report in January 2013 rating Rogers' impairment at 3%. After reviewing medical records from the 1999 injury, Dr. Prostic again rated Rogers' impairment at 10%. The ALJ reinstated the terminal date for October 28, 2013. Then, upon a series of motions by ALT-A&M, the ALJ extended the terminal date to February 5, 2014, so ALT-A&M could obtain additional

records of the 1999 injury. With the terminal date extended, ALT-A&M continued its discovery process.

On January 31, 2014, ALT-A&M deposed Rogers again. Rogers continued to deny any prior injuries to his left knee. Rogers subsequently testified he had previously sprained his left knee; however, he did not consider it an injury and would not have seen a doctor had his employer not requested it. Despite the records indicating Rogers was unable to walk as a result of the 1999 injury, he testified he did not recall being unable to walk. Rogers also testified he did not recall loss of motion, trouble bending his left knee, attending physical therapy, or being off work for 6 weeks. Rogers testified the information in the medical records was inaccurate.

In February 2014, ALT-A&M moved to extend the terminal dates and the ALJ granted the motion for the purpose of scheduling a hearing on the motion for extension of terminal dates. At the March 28, 2014, hearing, ALT-A&M indicated its expert was scheduled to examine Rogers on April 14, 2014, and a deposition of the expert was scheduled for May 8, 2014. Rogers objected to the extension and argued ALT-A&M had not set the examination until after the prior terminal dates had run. The April 2, 2014, order denying ALT-A&M's motion for extension of terminal dates stated:

"The claimant could have been examined and Dr. Slater's deposition taken at any time during the suspension of terminal dates or during the periods they were extended. No justification for the delay was proffered by counsel. The Court finds respondent's request for further extension would unnecessarily delay proceedings that have already taken too long."

On May 6, 2014, the ALJ issued an award for Rogers finding a 7.5% permanent partial impairment to Rogers' lower left extremity. ALT-A&M requested the Board review the award. The Board affirmed the ALJ's award. ALT-A&M timely appealed the Board's decision. In response to ALT-A&M's appeal, Rogers filed a motion for attorney fees pursuant to K.S.A. 2014 Supp. 44-536(g).

## ANALYSIS

*Rogers' written claim was timely.*

Pursuant to K.S.A. 2014 Supp. 44-556(a), final awards of the Board are subject to review under the Kansas Judicial Review Act,

K.S.A. 77-601 *et seq.*, as amended. "Whether an instrument propounded as a written claim for compensation in a workers compensation case or whether a claim for compensation has been filed in time is primarily a question of fact." *Lawrence v. Cobler*, 22 Kan. App. 2d 291, 294, 915 P.2d 157, *rev. denied* 260 Kan. 994 (1996). An appellate court reviews the Board's factual findings to determine whether the findings are supported by substantial evidence. *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014). Substantial evidence is " ' " "evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis [of fact] from which the issue raised could be easily resolved." ' " *Ward v. Allen County Hospital*, 50 Kan. App. 2d 280, 285, 324 P.3d 1122 (2014). Appellate courts do not reweigh evidence or engage in de novo review. *Williams*, 299 Kan. at 795.

The statute in effect at the time of the claimant's injury governs the rights and obligations of the parties. See *Bryant v. Midwest Staff Solutions, Inc.*, 292 Kan. 585, 588, 257 P.3d 255 (2011). In 2008, K.S.A. 44-520a(a) (repealed by L. 2011, ch. 55, sec. 29, effective May 15, 2011) read:

"No proceedings for compensation shall be maintainable under the workmen's compensation act unless a written claim for compensation shall be served upon the employer by delivering such written claim to him or his duly authorized agent, or by delivering such written claim to him by registered or certified mail within two hundred (200) days after the date of the accident, or in cases where compensation payments have been suspended within two hundred (200) days after the date of the last payment of compensation; or within one (1) year after the death of the injured employee if death results from the injury within five (5) years after the date of such accident."

A written claim need not be in any particular form so long as it is a claim. *Ours v. Lackey*, 213 Kan. 72, 78, 515 P.2d 1071 (1973). The purpose of a written claim is to enable an employer to make a timely investigation. *Lott-Edwards v. Americold Corp.*, 27 Kan. App. 2d 689, 696, 6 P.3d 947 (2000). To determine whether a document is a claim, the court uses the document and all of the surrounding facts and circumstances to make a reasonable interpretation of what the parties intended. *Fitzwater v. Boeing Airplane Co.*, 181 Kan. 158, 166, 309 P.2d 681 (1957). "The question is, did the employee

have in mind compensation for his injury when the instrument was signed by him or on his behalf, and did he intend by it to ask his employer to pay compensation?" *Fitzwater*, 181 Kan. at 166.

Without citing to any authority, ALT-A&M argues the incident/ accident form was not a claim. Instead, it argues Rogers was required to fill out the form to document an injury. ALT-A&M further argues there is nothing on the form indicating Rogers intended to make a claim for compensation. ALT-A&M fails to show why its unsupported argument is sound. Failure to support a point with pertinent authority or show why it is sound despite a lack of authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013). Issues not briefed by the appellant are deemed waived and abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). Since ALT-A&M has failed to properly brief whether Rogers timely filed a claim, we determine this issue has been waived and decline to address the merits of ALT-A&M's claim.

*The denial of a motion to extend terminal dates is a discretionary call by the ALJ.*

Appellate review of the ALJ's denial of a motion for extension of terminal dates is similar to the denial of a motion for continuance and is reviewed for an abuse of discretion. *Tull v. Atchison Leather Products, Inc.*, 37 Kan. App. 2d 87, 99, 150 P.3d 316 (2007). A judicial action is an abuse of discretion if it is arbitrary, fanciful, or unreasonable; is based on an error of law; or is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

Pursuant to K.S.A. 2014 Supp. 44-523(b), the parties are required to submit all evidence supporting their positions by the terminal dates set by the ALJ. An extension of the terminal dates may be granted if all parties agree. In addition, the terminal dates may be extended:

"(1) If the employee is being paid temporary or permanent total disability compensation;

"(2) for medical examination of the claimant if the party requesting the extension explains in writing to the administrative law judge facts showing that the party made a diligent effort but was unable to have a medical examination conducted prior to the submission of the case by the claimant but then only if the examination appointment was set and notice of the appointment sent prior to submission by the claimant; or

"(3) on application for good cause shown." K.S.A. 2014 Supp. 44-523(b).

Rogers was injured on September 15, 2008, and filed an application for hearing on January 3, 2011. On November 2, 2011, the ALJ suspended terminal dates pending receipt of Dr. Bieri's supplemental report. Subsequent terminal dates were reset for October 28, 2013. Upon ALT-A&M's motion, the ALJ extended the terminal dates multiple times up to and including March 28, 2014, at which time the ALJ considered whether another extension should be granted.

At the March 28, 2014, hearing, ALT-A&M indicated its expert's—Dr. Slater's—deposition was scheduled for May 8, 2014, with another examination of Rogers scheduled for April 14, 2014. Rogers argued ALT-A&M was dilatory in setting the new examination date as the date was not set until after the previous terminal dates had run. The record reflects the case had been pending for more than 3 years when the ALJ denied ALT-A&M's motion for extension of terminal dates. ALT-A&M had already been granted multiple extensions between August 28, 2013, and March 28, 2014. A reasonable person could reach the same conclusion as the ALJ— Dr. Slater's examination of Rogers could have been scheduled prior to the March 28, 2014, terminal date. We find the ALJ did not abuse his discretion when he denied ALT-A&M's motion to extend the terminal date.

*The Board's award is supported by substantial evidence.*

Next, ALT-A&M argues Rogers cannot prove his injury arose out of and in the course of his employment "because he repeatedly provided materially inaccurate and false and incomplete information under oath in this matter." Likewise, ALT-A&M argues the medical opinions establishing the nature and extent of Rogers' permanent partial impairment to his lower left extremity are based

on an incomplete and inaccurate medical history and are not substantial evidence. The record reflects the Board considered ALT-A&M's argument Rogers was untruthful and rejected it as irrelevant under the facts of this case. Here, ALT-A&M is really trying to get us to reexamine the facts and weigh the credibility of the various witnesses. We cannot reweigh the evidence. *Williams*, 299 Kan. at 795. Additionally, ALT-A&M does not cite any authority supporting these arguments. Failure to support a point with pertinent authority or show why it is sound despite a lack of authority or in the face of contrary authority is akin to failing to brief the issue. *Tague*, 296 Kan. at 1001. Issues not briefed by the appellant are deemed waived and abandoned. *Superior Boiler Works, Inc.*, 292 Kan. at 889. Since ALT-A&M has failed to properly brief both issues, we determine the issues have been waived and decline to address the merits of ALT-A&M's claim the record lacks substantial competent evidence to reflect Rogers' injury arose out of and in the course of his employment or that the medical information was sufficiently incomplete for the experts and the Board to determine the nature and extent of his permanent partial impairment to his lower left extremity. With this determination, we are left with the evidence presented by Rogers which is substantial competent evidence to support the Board's decision.

*Rogers is not entitled to attorney fees.*

Rogers moved for attorney fees on appeal pursuant to Kansas Supreme Court Rule 7.07(b) (2015 Kan. Ct. R. Annot. 72) and K.S.A. 2014 Supp. 44-536(g). Kansas Supreme Court Rule 7.07(b)(1) (2015 Kan. Ct. R. Annot. 72) states: "An appellate court may award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees." Further, "a Kansas court may not award attorney fees unless a statute authorizes the award or there is an agreement between the parties allowing attorney fees." *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013). Since K.S.A. 2014 Supp. 44-536(g) authorizes the director of workers compensation to award attorney fees when an attorney renders services subsequent to the ultimate disposition of the claim, Rogers argues appellate courts may award attorney fees for services on appeal.

Kansas Supreme Court Rule 7.07(b) (2015 Kan. Ct. R. Annot. 72) controls an appellate court's award of attorney fees. Interpretation of a Supreme Court rule is a question of law subject to unlimited review. *Snider*, 297 Kan. at 162. The principles of statutory construction also apply to construction of Supreme Court rules. *Kansas Judicial Review v. Stout*, 287 Kan. 450, 460, 196 P.3d 1162 (2008). If the language of a Supreme Court rule is clear, courts are bound by the rule's language. *Stout*, 287 Kan. at 460. If the rule is subject to more than one reasonable interpretation, the Supreme Court may "authoritatively state which interpretation is most consistent with our intent in adopting the rule in question." *Stout*, 287 Kan. at 460-61. Here, the rule's language is clear. Attorney fees are allowed on appeal if *the district court* could award attorney fees. Workers compensation cases are not heard by the district court. As a result, the district court cannot award attorney fees in workers compensation cases and appellate courts may not award attorney fees for services on appeal.

Supreme Court Rule 7.07(b)(1) (2015 Kan. Ct. R. Annot. 72) could reasonably be interpreted to mean an appellate court could award attorney fees if the lower court could award attorney fees. However, the language of Supreme Court Rule 7.07(b) (2015 Kan. Ct. R. Annot. 72) recently changed. Prior to July 1, 2012, Supreme Court Rule 7.07(b) (2011 Kan. Ct. R. Annot. 64) read: "Appellate courts may award attorney fees for services on appeal in any case in which *the trial court* had authority to award attorney fees." (Emphasis added.) This language is broader than the rule's current language and could be interpreted to include workers compensation cases. Presumably, when the Kansas Supreme Court revised the rule, it intended to change the rule. See *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 458, 264 P.3d 102 (2011) ("[C]ourts presume the legislature intends to make a substantive change when it revises an existing law, but this presumption's strength, weakness, or validity changes according to the circumstances."). As a result, Supreme Court Rule 7.07(b)(1) (2015 Kan. Ct. R. Annot. 72) requires we interpret the rule only to allow attorney fees in cases where the district court could award attorney fees. The rule

must be narrowly applied and limited to cases heard by the district court.

Further, the language of K.S.A. 2014 Supp. 44-536(g) does not explicitly grant an appellate court the ability to award attorney fees on appeal. Instead, it grants the ability to award attorney fees to the director of workers compensation. K.S.A. 2014 Supp. 44-536(g). Since neither Kansas Supreme Court Rule 7.07(b) (2015 Kan. Ct. R. Annot. 72) nor K.S.A. 2014 Supp. 44-536(g) authorize an appellate court to award attorney fees in workers compensation cases, Rogers' motion is denied.

Affirmed in part and denied in part.