No. 108,125

DAVID C. WILLIAMS, *Appellee*, v. PETROMARK DRILLING, LLC,
and ACE FIRE UNDERWRITERS INS. CO., *Appellants*.

(326 P.3d 1057)

Opinion filed June 6, 2014.

*Douglas C. Hobbs*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Wichita, and *Ryan D. Weltz*, of the same firm, were on the brief for appellants.

*Scott J. Mann*, of Mann Law Offices, LLC, of Hutchinson, was on the brief for appellee.

BEIER, J.: Claimant David Williams petitioned this court for review of the Court of Appeals decision reversing his Workers Compensation Board award. Because the evidence on whether Williams was at work or leaving work at the time of his injury was not amenable to only one factual finding, the Court of Appeals erred by deciding it as a matter of law. We therefore reverse the Court of Appeals and hold that substantial competent evidence supported the Board's factual finding in Williams' favor.

Williams worked the dayshift for respondent Petromark Drilling, LLC, an oil drilling company, at drill sites approximately 60 miles from his home. Ordinarily, on days that Williams worked, he would

travel to Great Bend and meet his supervisor, Kenneth Roach. Roach would then drive Williams and other members of the crew in Roach's personal vehicle to and from the drill sites. Petromark reimbursed Roach mileage but did not pay Williams and the other crew members for their travel time or a per diem. If Roach was unavailable to provide transportation, the crew members would be reimbursed mileage for driving their personal vehicles to the drill sites.

On the day of Williams' injury, instead of getting a ride after work with Roach, he rode with Chris LaMaster, who had worked the night shift and then stayed on for the day shift to fill in the short-handed crew. When Williams informed Roach that he was going to ride with LaMaster, Roach said that would be fine. Roach did not direct LaMaster or Williams on the route they should take home.

Before leaving the drill site, Williams noticed two low tires on LaMaster's car, and the pair filled them. When a rear tire nevertheless started to lose air and began to vibrate and make noise along the way, LaMaster pulled over and used a cigarette lighter-powered pump to add air to it. LaMaster was in a hurry, so he stopped filling the tire after 10 minutes. The tire was about half-inflated. Two miles farther along, the tire blew out and the car rolled several times. Williams was ejected and injured.

Williams would later testify before the administrative law judge (ALJ) that he rode with LaMaster for his own convenience because the trip would have been shorter, and his wife would not have had to drive to Great Bend to pick him up.

The ALJ entered a decision in favor of Petromark, concluding that Williams' injuries were not compensable because they did not arise out of and in the course of his employment:

"At the time of the accident giving rise to [Williams'] injuries, he had left work for the day and was on his way home, as a passenger in a co-worker's vehicle. He was not being paid or performing any services or duties for his employer. His accident did not occur 'in the course of' his employment. [Williams'] duties on the drilling rig did not include driving. [Williams'] injuries did not 'arise out of' his employment with Respondent.

. . . .

"Even though [Williams] was an oilfield worker, travel was no more intrinsic to his employment than any other commuter on the highway. At the time of his accident, [Williams] was not traveling between well sites, and he was not performing any services for his employer or advancing his employer's interests. He was simply on his way home at the end of the work day."

The Board reversed the ALJ's decision and entered an award in favor of Williams. In a 3-2 split decision, the Board decided that Williams' injury did arise out of and in the course of his employment:

"[Williams'] job as an oil drilling crew member required that he travel from drill site to drill site. He was not paid wages when traveling from his home to whatever site the crew was working on, nor was he reimbursed for his mileage expense if he drove his own vehicle. Nevertheless, the very nature of the work necessitated travel to ever-changing locations. Travel was inherent to the job. When travel is inherent to or an integral part of the job, the going and coming rule does not apply. As such, [Williams'] accident, which occurred while [Williams] was in a vehicle travelling from the drill site to his home, arose out of the nature, conditions, obligations and incidents of his employment with respondent."

After Petromark appealed to the Court of Appeals, the Court of Appeals reversed the Board. The Court of Appeals held that Williams' claim was barred by the "going and coming" rule of K.S.A. 2010 Supp. 44-508(f).

"Petromark did not hire a new crew at every drill site. Williams, a crew member, had no permanent work site. Instead, he was required to travel to ever-changing drill sites. Roach, the driller, was paid mileage for driving his crew members to and from the drill site. Whether they drove themselves or rode with Roach, crew members like Williams and LaMaster were not paid for their travel to and from the drill site.

"The key to resolution of this case is whether Williams' travel, at the time of his accidental injury, was furthering Petromark's interests. There was a mutually beneficial transportation arrangement between Williams (free ride to and from the drill site) and Petromark (did not have to pay for crew's food or lodging or find a new crew at every drill site). But Williams chose to ride from the drill site with LaMaster instead of Roach. Roach's travel was definitely inherent to his employment because it furthered Petromark's interests. The same cannot be said of Williams' travel at the time of his accidental injury. He was on a personal mission to get home sooner. The proximate cause of Williams' injury was LaMaster's rather than Petromark's negligence.

"The Board misapplied the law to the facts of this case." *Williams v. Petromark Drilling*, 49 Kan. App. 2d 24, 32, 303 P.3d 719 (2013).

Generally the issue of whether an employee's accident arose out of and in the course of employment is a question of fact. *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 559, 293 P.3d 723 (2013). A reviewing court's responsibility is to examine the record as a whole to determine whether the Board's factual determinations are supported by substantial evidence. K.S.A. 2013 Supp. 77-621(c)(7). This analysis requires the court to (1) review evidence both supporting and contradicting the agency's findings; (2) examine the presiding officer's credibility determinations, if any; and (3) review the agency's explanation as to why the evidence supports its findings. K.S.A. 2013 Supp. 77-621(d); *Redd v. Kansas Truck Center*, 291 Kan. 176, 182, 239 P.3d 66 (2010). The court does not reweigh the evidence or engage in de novo review. K.S.A. 2013 Supp. 77-621(d).

Although the Court of Appeals correctly observed that the facts in this case were undisputed, it erred when it treated those established facts as supportive of only one finding as a matter of law, *i.e.*, that Williams was ineligible for recovery under the going and coming rule of K.S.A. 2010 Supp. 44-508(f). If there was substantial competent evidence to support the Board's finding that the tire blowout occurred while Williams was in the course and scope of his employment, *i.e.*, during travel intrinsic to his duties for Petromark, then the Court of Appeals' limited role required it to affirm the Board. See K.S.A. 2013 Supp. 77-621(c)(7), (d); *cf. Scott v. Hughes*, 294 Kan. 403, 412, 275 P.3d 890 (2012).

We see such substantial competent evidence in the record on appeal. As the Board explained in its order, Williams' job as an oil drilling crew member required that he travel to ever-changing remote drill sites. Roach testified at his deposition that Williams would not be employed if he was unwilling to travel to those sites. Petromark provided an elective travel option to its employees. The Court of Appeals crossed a line from evaluating this evidence in light of the record as a whole to test whether it supported the Board's factfinding into ruling as a matter of law on evidence that was, although undisputed, conflicting under the governing statute.

## CONCLUSION

The decision of the Court of Appeals is reversed, and the Board's award is affirmed.

MORITZ, J., not participating.