NOT DESIGNATED FOR PUBLICATION

No. 113,418

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JENNIFER L. KRUEGER,
*Appellant,*

v.

KWIK SHOP, INC.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed March 4, 2016. Affirmed.

*Timothy J. Pringle* and *Bryce D. Benedict*, of Eschmann & Pringle, of Topeka, for appellant.

*Dallas L. Rakestraw*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellee.

Before BUSER, P.J., ATCHESON and SCHROEDER, JJ.

*Per Curiam*:  Jennifer L. Krueger appeals the workers compensation board's (the Board) decision finding her work injury was not a compensable injury. Upon review of the record before us, we affirm the Board's decision as Krueger failed to establish this injury was more than an aggravation of a preexisting condition. Affirmed.

FACTS

On July 18, 2012, while at work at Kwik Shop, Krueger picked up a 25-pound canister of soda syrup to restock the soda fountain and felt a popping sensation in her

back. Krueger immediately dropped the syrup and had to receive help from a co-worker to complete the task. On her way to the front to continue stocking, Krueger collapsed and was taken to the hospital via ambulance. Krueger stated she could not walk due to intense pain.

Krueger testified that after her accident, her lower back hurt with pain radiating down her legs and she had no feeling in her legs. Following her initial treatment, Krueger returned to work with restrictions.

On October 19, 2012, Krueger met with Dr. John Estivo regarding her injury at Kwik Shop. Dr. Estivo evaluated her medical complaints and reviewed her medical history. Dr. Estivo learned from Krueger she had a previous work-related injury involving her back.

In 2009, Krueger was working as a nurse's aide in Goodland when she sustained an injury to her back lifting a patient. The injury caused pain in her lower back, left buttock, and left leg. Krueger was diagnosed as having: (1) traumatic mechanical low back pain, (2) lumbar herniated nucleus pulposus, (3) lumbar degenerative disc disease, (4) lumbar radiculopathy, and (5) nicotine addiction. To treat Krueger's left leg pain, which was likely caused by pressure on her nerves from swelling at the L4-L5 disc space, her physician recommended and provided three epidural steroid injections. Upon maximum medical improvement, Krueger was assigned a 7% permanent partial general bodily functional impairment based upon the *AMA Guides to the Evaluation of Permanent Impairment* (6th ed. 2007). Krueger then settled her workers compensation case based on the 7% permanent partial general bodily impairment. Krueger was released for work with no restrictions. Krueger testified she thought her prior injury had been completely resolved although she did continue to use her transcutaneous electrical nerve stimulation unit periodically to treat her recurring back pain.

With knowledge of Krueger's 2009 injury, Dr. Estivo compared her 2009 lumbar spine magnetic resonance imaging (MRI) report to the current MRI of Krueger's lumbar spine and concluded: (1) Krueger had not suffered an injury as a result of the July 18, 2012, incident at Kwik Shop because there was no change in her physical structure causing damage and (2) her pre-existing degenerative condition of her lumbar spine was the prevailing factor for her current condition. Consequently, he determined Krueger did not require medical treatment, had sustained no impairment, and required no restrictions as a result of the July 18, 2012, incident.

On December 18, 2012, Krueger met with Dr. Edward Prostic for a second opinion. Dr. Prostic obtained a subjective medical history, reviewed Krueger's past medical records, and performed a physical examination. Following a review of her medical records, Dr. Prostic diagnosed Krueger with a herniated lumbar disc with radiculopathy caused by disc protrusion at L4-L5. Dr. Prostic concluded the work-related accident in 2009 and the subsequent injury sustained on July 18, 2012, were the prevailing factors in causing Krueger's need for medical treatment. He recommended epidural steroid injections, antidepressant medication, and a gentle exercise program. He also suggested temporary work restrictions for Krueger which would allow her to return to light duty employment with avoidance of more than minimal bending and twisting at the waist or captive positioning. Dr. Prostic did not review Krueger's 2009 lumbar spine MRI.

With a workers compensation claim pending, given the disparity between Dr. Estivo's and Dr. Prostic's opinions, the administrative law judge (ALJ) ordered an independent medical examination with Dr. Paul Stein. Krueger met with Dr. Stein on April 18, 2013. After his initial evaluation, Dr. Stein felt "it would be helpful to have the images of the lumbar MRI scan from 2009 for review to compare with my interpretation of the post-injury MRI scan of August 2012." In response, the parties provided Dr. Stein

with the 2009 MRI scan. Following a comparison of the 2009 MRI and the 2012 MRI, Dr. Stein concluded:

> "Comparing the imaging studies of August, 2009, to the radiology report as well as my reading of the August, 2012, MRI scan, I do not see a significant difference. I cannot state within a reasonable degree of medical probability that there has been a change in physical structure of her back, or any new lesion, seen on MRI scan. On that basis, the current condition most likely represents a symptomatic aggravation of her previous condition. Having had the opportunity to make this review, there is some alteration of the opinion stated in my report of 4/18/13, Page 5, section 1. While I still believe there is a relationship between the work incident on 7/18/12 and the current symptoms by virtue of aggravation of the preexisting condition, I cannot state that the work incident was the primary or prevailing factor."

Dr. Stein found Krueger did not have any permanent impairment of function based on the fourth edition of the AMA Guidelines over and above what was previously determined following her 2009 injury and settlement of that claim. Dr. Stein was of the opinion Krueger's condition did not constitute a new injury but still provided treatment recommendations and temporary work restrictions.

Relying on Dr. Stein's report, the ALJ entered a preliminary hearing order on August 8, 2013, denying Krueger's request for benefits. On appeal, the Board affirmed the ALJ's decision denying preliminary benefits.

On January 14, 2014, Krueger was reevaluated by Dr. Prostic. He found Krueger's condition had continued to deteriorate and diagnosed her with bilateral radiculopathy and severe deconditioning with a possible psychological component. At his deposition, Dr. Prostic acknowledged Krueger had suffered from preexisting degenerative disc disease, including a herniated disc at L4-L5; however, he thought her current condition was more likely the result of an acute injury rather than the natural progression of a preexisting

4

disease. Thus, her work accident was the prevailing factor for her condition. Dr. Prostic concluded that without treatment, Krueger had sustained a 20% permanent partial general bodily functional impairment as a result of her workplace incident with a 7% preexisting impairment for a total of 27% impairment. Dr. Prostic calculated the impairment ratings he assigned Krueger using the Range of Motion Model from the *AMA Guides to the Evaluation of Permanent Impairment* (4th ed. 1995) He acknowledged that pursuant to the specific dictates of the AMA Guidelines, this was not the preferred method to determine an impairment. If he had used the Diagnostic Related Estimate (DRE) method, Krueger would have sustained no new impairment because she was already in a DRE Lumbosacral Category III for a 10% permanent partial general bodily functional impairment because of her 2009 injury.

After completing discovery, the parties submitted the matter to the ALJ for a final determination at a regular hearing. On July 31, 2014, based on the evidence presented at the final hearing, the ALJ found the major changes in the 2011 amendment to K.S.A. 2011 Supp. 44-508(f) controlled. The legislation deleted language stating the lesion need not be "of such character as to present external or visible signs of its existence." The ALJ denied Krueger's request for workers compensation benefits. The ALJ found Kruger had failed to carry her burden of proof that she had sustained a personal injury by accident, as defined by K.S.A. 2014 Supp. 44-508(f). The ALJ relied upon Dr. Stein's report that given Krueger's prior medical history, he was unable to state within a degree of medical probability there had been a change in the physical structure of Krueger's back or that there was a new lesion. Additionally, the ALJ found that based upon Dr. Stein's testimony, Krueger had only experienced an aggravation of her preexisting spinal condition—a noncompensable aggravation under the statute. Furthermore, the ALJ found that even if there was an injury, the injury would not be compensable because Krueger's work simply triggered a preexisting condition. Finally, the ALJ found that even if Krueger suffered an injury by accident when she lifted the soda syrup, the injury would only arise out of her employment if:

"(i) There is a causal connection between the conditions under which the work is required to be performed and the resulting accident; and

"(ii) the accident is the prevailing factor causing the injury, medical condition, and resulting disability or impairment" K.S.A. 2014 Supp. 44-508(f)(2)(B)

The ALJ found the lifting of the syrup was not the prevailing factor causing Krueger's resulting injury; Krueger failed to carry her burden of proof that she suffered an injury by accident arising out of her employment. As a final matter, the ALJ concluded Krueger had experienced no additional functional impairment, no task loss, no wage loss, and denied her application for workers compensation benefits.

Krueger appealed the decision to the Board. After reviewing the entire evidentiary record and considering the applicable law, the Board made three key findings of fact: (1) Krueger failed to carry her burden of proof that she sustained a personal injury by accident because there was insufficient evidence Krueger had a change in her physical structure as a result of her July 18, 2012, accident; (2) even if there was a personal injury, the workplace incident solely aggravated a preexisting degenerative back condition and/or was not the prevailing factor for her injury, medical condition, and disability; and (3) Krueger failed to prove she had sustained an increased functional impairment as a result of her work accident. The Board affirmed the ALJ's denial of Krueger's application for workers compensation benefits.

Krueger timely appeals the Board's decision.

ANALYSIS

*Did Krueger suffer a compensable injury?*

When "an employee suffers personal injury by accident, repetitive trauma or occupational disease arising out of and in the course of employment, the employer shall

6

be liable to pay compensation to the employee in accordance with and subject to the provisions of the workers compensation act." K.S.A. 2014 Supp. 44-501b(b). "The burden of proof shall be on the claimant to establish the claimant's right to an award of compensation and to prove the various conditions on which the claimant's right depends. In determining whether the claimant has satisfied this burden of proof, the trier of fact shall consider the whole record." K.S.A. 2014 Supp. 44-501b(c). The stated intent of the legislature is that the workers compensation act "be liberally construed only for the purpose of bringing employers and employees within the provisions of the act. The provisions of the workers compensation act shall be applied impartially to both employers and employees in cases arising thereunder." K.S.A. 2014 Supp. 44-501b(a)

In denying Krueger's claim for benefits, the Board found she had failed to demonstrate she had sustained a personal injury by accident, repetitive trauma, or occupational disease arising out of and in the course of employment with Kwik Shop.

On appeal, Krueger argues the ALJ and the Board erred when they interpreted K.S.A. 2014 Supp. 44-508(f) to require an injury be visible. In determining whether Krueger was entitled to benefits, the ALJ and the Board started the analysis at whether Krueger had suffered an injury. In doing so, the ALJ and the Board had to assume Krueger's lifting of the soda syrup and the subsequent popping in her back was an injury. For purposes of analyzing this issue on appeal, we will also make that assumption. K.S.A. 2014 Supp. 44-508(f)(1) defines an injury as:

> "[A]ny lesion or change in the physical structure of the body, causing damage or harm thereto. Personal injury or injury may occur only by accident, repetitive trauma or occupational disease as those terms are defined."

7

In 2011, K.S.A. 44-508(f)(2) was amended to exclude injuries which solely aggravate, accelerate, or exacerbate a preexisting condition. See L. 2011, ch. 55, sec. 5. The current statute states:

"An injury is compensable only if it arises out of and in the course of employment. An injury is not compensable because work was a triggering or precipitating factor. An injury is not compensable solely because it aggravates, accelerates or exacerbates a preexisting condition or renders a preexisting condition symptomatic." K.S.A. 2015 Supp. 44-508(f)(2).

"Prior to 2011, well-established workers compensation law provided that when a worker's job duties aggravated or accelerated an existing condition or disease or intensified a preexisting condition, the aggravation became compensable as a work-related accident. The 2011 amendments changed the scope of a compensable injury. K.S.A.2011 Supp. 44–508(f)(2) provides that an injury is not compensable solely because it aggravates, accelerates, or exacerbates a preexisting condition or renders a preexisting condition symptomatic." *Le v. Armour Eckrich Meats*, 52 Kan. App. 2d ____, Syl. ¶ 3, 364 P.3d 571 (2015).

In *Nam Le*, this court interpreted the phrase "solely because it aggravates, accelerates or exacerbates a preexisting condition or renders a preexisting condition symptomatic" was not compensable if no physical injury above and beyond an aggravation of a preexisting condition is shown. *Le*, 364 P.3d at 577-78.

Initially, there was an external sign of a change in the physical structure of the body as demonstrated by Krueger's testimony that at the time of the accident the pain was so intense she could not walk and had to be taken to the hospital via ambulance. However, the record also contains deposition testimony and reports from three separate physicians which tend to demonstrate there was not a change in Krueger's physical condition. Dr. Estivo found, after comparing Krueger's 2009 MRI to her 2012 MRI, that while Krueger was reporting increased pain, there was no new lesion or structural change

to her spine. Dr. Prostic found after a review of Krueger's records there was a physical change. Dr. Prostic testified that Krueger's previous bulging disc had herniated; however, at his deposition, Dr. Prostic admitted he did not compare Krueger's 2009 MRI to her 2012 MRI so he was not able to confirm whether in 2009 she had bulging disc or a herniated disc. Because of the disparity between Dr. Prostic and Dr. Estivo's reports, the ALJ ordered an independent evaluation by Dr. Stein. While Dr. Stein did feel Krueger had suffered an acute aggravation to her lower back degenerative disc disease, he was unable to state within a reasonable degree of medical probability there was a new lesion or physical change in the structure of Krueger's spine. The Board found Dr. Stein and Dr. Estivo more credible than Dr. Prostic since they both reviewed Krueger's 2009 and 2012 MRI reports:

> "Drs. Stein and Estivo, after reviewing claimant's pre-accident and post-accident MRIs and/or MRI reports, concluded there was no change in claimant's physical structure. Only Dr. Prostic came to the opposite conclusion. The Board finds the opinions of Drs. Estivo and Stein more credible than those of Dr. Prostic. Dr. Stein, a neutral physician appointed by the ALJ, was the only physician who reviewed both MRI films. Moreover, Dr. Prostic testified he thought there was a change in physical structure because claimant was told previously by a radiologist and treating physicians she had bulging discs before, but now had a herniated disc. The basis for his opinion is suspect.
>
> "Claimant asserts a change in physical structure may not be visible on an MRI. Claimant argues because she had pain, there must be a change in her physical structure, and, therefore, she sustained personal injury. The Board disagrees. Not all pain arises from a change in physical structure. Because an asymptomatic preexisting condition becomes symptomatic does not necessarily mean there was a change in physical structure. If claimant's logic were [*sic*] adopted, any time an injured worker had pain from a work injury, he or she would have a change in physical structure and would have sustained personal injury as defined by K.S.A. 2012 Supp. 44-508(f)(1).
>
> "The Board finds claimant failed to prove she sustained personal injury by accident, as there is insufficient evidence claimant had a change in her physical structure as a result of her July 2012 accident. With respect to this issue, the Board adopts the ALJ's findings and conclusions as its own as if specifically set forth herein."

9

Thus, when we apply *Nam Le*, in light of the record as a whole, Krueger's injury is not compensable. When reviewing whether the record as a whole supports the Board's factual determination Krueger's injury solely aggravated her preexisting degenerative disc disease, we (1) review evidence both supporting and contradicting the Board's findings; (2) examine the Board's credibility determination, if any; and (3) review the Board's explanation as to why the evidence supports its findings. See *Williams v. Petromark Drilling, LLC*, 299 Kan. 792, 795, 326 P.3d 1057 (2014). This court cannot reweigh the evidence or make an independent review of the facts. See *Moore v. Venture Corporation*, 51 Kan. App. 2d 132, 137-38, 343 P.3d 114 (2015).

The record demonstrated Krueger had previously suffered a workers compensation injury that resulted in lumbar degenerative disc disease. Three separate physicians performed independent medical evaluations of Krueger after her accident at Kwik Shop. Dr. Estivo compared Krueger's 2009 MRI to her 2012 MRI and found no change in her condition. Dr. Prostic concluded Krueger had suffered additional physical damage; however, his deposition revealed he had not actually compared Krueger's 2009 MRI to her 2012 MRI. While Dr. Stein concluded Krueger had suffered an acute aggravation of her lower back degenerative disc disease, after a comparison of Krueger's 2009 and 2012 MRIs, he could not state with a reasonable degree of medical probability that there had been any change Krueger's lower back's physical structure.

After a review of the record, including the deposition testimony of Dr. Estivo, Dr. Prostic, and Dr. Stein, the Board found Dr. Estivo and Dr. Stein's testimony to be more credible and concluded:

> "The greater weight of the medical evidence supports a finding that claimant's preexisting degenerative back condition made her susceptible to future back issues, which could be triggered by many daily or work activities. In 2009, Dr. Mahalek indicated claimant had multilevel degenerative disc disease and her prognosis most likely would

involve a history of chronic low back pain. The Board finds claimant's July 18, 2012,
injury solely aggravated her preexisting degenerative disc disease."

Substantial competent evidence supports the Board's conclusion the injury was not compensable because it solely aggravated, accelerated, or exacerbated Krueger's preexisting condition.

Affirmed.