NOT DESIGNATED FOR PUBLICATION

No. 118,503

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MATTHEW L. BILLINGTON,
*Appellee*,

v.

MIDWEST MINERALS, INC. and CINCINNATI INSURANCE CO.,
*Appellants*.


MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed August 10, 2018. Affirmed.

*Christopher J. McCurdy* and *Ryan D. Weltz*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for appellants.

*Patrick C. Smith*, of Patrick C. Smith, LLC, of Pittsburg, for appellee.


Before BUSER, P.J., MALONE and STANDRIDGE, JJ.


PER CURIAM: The Workers Compensation Board (Board) determined that Matthew L. Billington was injured in the course of his employment after he was assaulted by coworker James Chapman. Midwest Minerals, Inc., Billington's employer at the time of the injury, disagrees. Viewing the record as a whole, we find substantial evidence supports the Board's determination. Accordingly, we affirm.

FACTS

Billington worked as a heavy equipment operator for Midwest Minerals. In January 2015, he had a disagreement with Chapman. Chapman picked Billington up and "tossed [him] on a bunch of rocks," where Billington landed on the back side of his ribs. Billington suffered a rib injury and a punctured lung. The injuries sustained required "extensive treatment" which included chest surgery and the excision of a rib, leaving him with permanent injury.

Billington went to the hospital the morning after the incident. Billington testified that when he arrived at the hospital, he initially told the doctor that he was injured when he fell out of the bed of a pickup truck and hit the ball hitch. In explaining why he did not initially let the doctor know how he actually sustained his injuries, Billington testified that he was on probation after being convicted of assault and he feared being sent to prison if his supervision officer thought that he had engaged in a fight. Billington went on to explain that his treating physician did not believe his injuries were consistent with falling out of a pickup truck, so Billington ultimately told the doctor the truth.

Billington filed an application for hearing and sought compensation for his injury. Midwest Minerals acknowledged that the altercation with Chapman occurred but disputed Billington's claim that the altercation caused Billington's injuries. Rather, Midwest Minerals argued Billington's first report to medical providers—that he was injured outside of work hours when he fell out of a pickup truck—was the true version, which meant his injury was noncompensable.

The administrative law judge (ALJ) was persuaded by the argument presented by Midwest Minerals. Specifically, the ALJ found Billington was not a credible witness because he had provided two different stories to his medical providers regarding how he

was injured. The ALJ denied Billington's request for compensation, finding Billington had failed to bear his burden to prove he was injured as a result of the assault at work.

Billington petitioned for review with the Board. The Board shared the ALJ's concerns about Billington's credibility. The Board, however, found credible the testimony of two other witnesses, both of which supported Billington's claim that his injuries were caused by the altercation at work. Considering the totality of the evidence presented to the ALJ, the Board concluded that Billington's injuries were caused by the assault at work and therefore were compensable. The case was remanded to the ALJ for further findings of fact. On remand, the ALJ entered a functional disability award, which was affirmed by the Board. The specifics of the award are not in dispute in this proceeding; the only issue raised by Midwest Minerals in its petition for judicial review is whether the Board erred by finding that Billington was injured in the course of his employment.

PROCEDURAL HISTORY AND STANDARD OF REVIEW

Under the Kansas Workers Compensation Act, an employer is liable to pay compensation to an employee that suffers personal injury by accident arising out of and in the course of employment. K.S.A. 2017 Supp. 44-501b(b). Whether an accident arises out of and in the course of employment is a question of fact. *Scott v. Hughes*, 294 Kan. 403, 415, 275 P.3d 890 (2012); see K.S.A. 2017 Supp. 44-508(f)(3)(A)(i). The burden of proof is on the claimant to establish his or her right to an award. K.S.A. 2017 Supp. 44-501b(c). "'Burden of proof' means the burden of a party to persuade the trier of facts by a preponderance of the credible evidence that such party's position on an issue is more probably true than not true on the basis of the whole record." K.S.A. 2017 Supp. 44-508(h).

In this case, the ALJ determined that Billington failed to prove that his injuries were sustained at work:

3

"Here, Billington gave two plausible explanations for how he suffered his injuries, one work-related and one not. He acknowledges that one story is a lie. Billington's willingness to lie is established, whether to his sister and treating physicians, his roommate or his employer. That demonstrated willingness to lie severely undermines his credibility. He already had credibility issues because of his status as a convicted felon, on parole for crimes of dishonesty or false statement. The court could find this claim compensable only if it found Billington credible. The court is unable to make that finding. Midwest Minerals did not have to prove that Billington was injured at [Todd] Fennimore's. Having given voice to the lie, it was Billington's burden to prove his injuries occurred at work, as a result of Chapman's assault. Billington failed to carry that burden."

Billington appealed from the ALJ's determination, arguing the totality of the evidence presented to the ALJ at the hearing established by a preponderance of the evidence that his injuries were sustained at work. See K.S.A. 2017 Supp. 44-551(l)(1) (If either party is dissatisfied with the ALJ's determination, that party may appeal to the Board.). The Board's review of an ALJ's decision is limited to questions of law and fact that were presented to the ALJ in the proceedings below. K.S.A. 2017 Supp. 44-555c(a). The Board has the "exclusive jurisdiction to review all decisions, findings, orders and awards of compensation of [ALJs] under the workers compensation act." K.S.A. 2017 Supp. 44-555c(a).

Upon review of the record in its entirety from the proceedings held before the ALJ, the Board determined Billington had satisfied his burden to prove his injuries arose out of and in the course of his employment and were therefore compensable:

"[Midwest Minerals] does not dispute that [Billington] suffered a work-related accident on the date alleged. The assault by Mr. Chapman was witnessed and is well documented in this record. The dispute centers around what, if any, injuries [Billington] may have suffered from that assault, or whether [Billington] was involved in a non-work related incident at his neighbor's house, which led to the injuries for which [Billington] received extensive medical treatment.

4

"The ALJ found [Billington's] credibility to be seriously undermined in this instance. The Board agrees with that assessment. However, the Board cannot discount the testimony of Mr. [Travis] Ashbaugh [Billington's roommate] and Mr. Fennimore. Mr. Ashbaugh has no interest in this dispute, beyond [Billington] being his friend. [Ashbaugh] even lost his job when he assaulted Mr. Chapman, in retaliation for the attack on his friend. Mr. Fennimore does have an interest in the outcome, with the possibility of [a] claim against his homeowners insurance. But [Fennimore] denied, under oath, that any such injury ever occurred, or that [Billington] helped load anything onto a pickup on the date of his injury. The two witnesses together provide a convincing explanation for [Billington's] contradictory stories."

Midwest Minerals appeals from the Board's finding. Decisions of the Board are then appealable directly to the Kansas Court of Appeals. K.S.A. 2017 Supp. 44-556(a). The applicable standard of review is particularly important in this case. Our review of the Board's action is governed by the Kansas Judicial Review Act (KJRA). K.S.A. 2017 Supp. 77-621. We may grant relief if "the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole." K.S.A. 2017 Supp. 77-621(c)(7). "'[I]n light of the record as a whole'" includes relevant evidence cited by the parties that either supports or detracts from the Board's findings of fact. K.S.A. 2017 Supp. 77-621(d).

Notably, we cannot reweigh the evidence or engage in de novo review of the Board's factual findings. K.S.A 2017 Supp. 77-621(d). We explained the balance between "de novo review" and the section 77-621(d) requirement to examine evidence that detracts from the Board's ruling in *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 212 P.3d 239 (2009). Specifically, we found the reviewing court must determine whether "the evidence supporting the agency's decision has been so undermined by cross-examination or other evidence that it is insufficient to support the agency's conclusion." 42 Kan. App. 2d at 363. We apply that standard here.

ANALYSIS

Midwest Minerals argues substantial evidence does not support the Board's decision that Billington's injury was compensable. To decide whether there is substantial evidence to support the Board's factual findings, the applicable standard of review requires us to: (1) review evidence both supporting and contradicting the Board's findings; (2) examine credibility determinations made by the Board, if any; and (3) review the Board's explanation as to why the evidence supports its findings. See *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014). At the end of the day, our task is to determine whether the evidence supporting the Board's decision has been so undermined by other evidence that it is insufficient to support the Board's conclusion. *Lake v. Jessee Trucking*, 49 Kan. App. 2d 820, Syl. ¶ 4, 316 P.3d 796 (2013).

In support of its argument that the Board's decision is not supported by substantial evidence, Midwest Minerals relies primarily on the ALJ's finding that Billington was not a credible witness because he provided two different versions of how he sustained his injuries: one that arose out of and in the course of employment (the coworker assault) and one that did not (falling out of a pickup truck and hitting the ball hitch). Midwest Minerals contends the ALJ was able to personally observe Billington's testimony and make a more thorough evaluation of his credibility, which necessarily required the Board to give the ALJ's decision great deference on that issue.

Billington testified at the regular hearing that he was injured during the incident at work. He admitted that he initially told hospital personnel he had been injured when he fell out of a pickup truck and struck the ball hitch on the way down. Billington testified that he faced a 10-year prison sentence if he violated his probation, and he was concerned that he would be in trouble for being involved in a fight even if he was not the aggressor. Billington said he changed his story after his doctor noted that the injury presentation did not match that mechanism of injury.

6

Billington initially repeated the story about the truck and ball hitch to Sidney Smith, his boss. But after he told hospital personnel about the fight, Billington also told Smith that the ball hitch story was not true and that the injury actually occurred at work. Smith knew about the fight, but he did not know about the injury until Billington told him about it. Billington's assailant pled guilty to assault, and he was fired by Midwest Minerals.

The altercation was witnessed by Chris Spencer, Billington's coworker. After the incident, Spencer rode a van home with Billington. Spencer asked Billington if he was okay and Billington indicated he was. Spencer did not notice that Billington was in any distress during the ride home, but Spencer conceded that he had ear plugs in the whole time and did not engage with Billington during the ride.

Spencer's testimony about Billington's lack of physical distress, however, was contradicted by Travis Ashbaugh, Billington's roommate. Ashbaugh testified that as soon as Billington arrived home he was "favoring his side" and was having trouble breathing, which Billington blamed on being "hurt at work." Ashbaugh left the house and when he returned he was surprised to see Billington had already returned from a friend's home, much earlier than expected. The next morning, Billington told Ashbaugh that he was going to the hospital. Billington never told Ashbaugh that he was injured by falling off of a truck.

Ashbaugh's observations were echoed by Todd Fennimore, the neighbor that Billington visited on the evening of the fight. Fennimore described seeing Billington "bent over sideways" and having trouble breathing. Billington told Fennimore that he fell down at work, and he left Fennimore's home after only 30 minutes. According to Fennimore, Billington never helped him load anything on or off of a truck. In fact, Ashbaugh testified that there was no truck at Fennimore's home at the time in question.

The Board relied heavily on this testimony from Ashbaugh and Fennimore. Although the Board shared the ALJ's concerns regarding Billington's credibility, it also believed that the combined testimony of Ashbaugh and Fennimore provided a "convincing explanation for [Billington's] contradictory stories." This analysis from the Board nullifies one of Midwest Minerals' primary arguments—that the Board erred by reweighing the ALJ's credibility findings. Instead of reweighing the ALJ's findings regarding Billington's credibility, the Board reviewed the evidence both supporting and contradicting the ALJ's findings regarding credibility, reviewed the ALJ's explanation as to why the evidence supported its findings, and then determined that Billington's second version of the story was the most persuasive. The Board also found significant that Midwest Minerals did not dispute that the fight occurred in the manner described by both Billington and Spencer, which included testimony stating that (a) Chapman either pushed or threw Billington, who fell backwards onto some rocks; (b) Billington was slight in appearance, about 5' 9", and appeared to weigh about 120-125 pounds, while Chapman was bigger, weighing around 250 pounds; and (c) Billington lay on the rocks for a few minutes after the assault before getting up.

This case involves a factual dispute regarding whether Billington was injured while at work. The Board found that he was. On appeal, our task is limited to reviewing the record as a whole to determine whether the Board's factual determinations are supported by substantial evidence. After reviewing the evidence both supporting and contradicting the Board's finding that Billington was injured at work, we find the Board's decision is supported by substantial evidence.

Affirmed.